# EXHIBIT C

LEXSEE 2001 U.S. DIST. LEXIS 18387

**MONICA MORIN, Plaintiff, v. LA PETITE ACADEMY, INC., Defendant.**

**CAUSE NO. IP 00-1129-C H/K**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION**

*2001 U.S. Dist. LEXIS 18387*; *12 Am. Disabilities Cas. (BNA) 841*

**November 8, 2001, Decided**

**DISPOSITION:** [*1] Defendant's motion for summary judgment was granted.

**COUNSEL:** For MORIN, MONICA, plaintiff: JOHN H HASKIN, HASKIN, LAUTER, COHEN & LARUE, INDIANAPOLIS, IN.

For LA PETITE ACADEMY, INC., defendant: BRYCE H BENNETT JR, RILEY, BENNETT & EGLOFF, INDIANAPOLIS, IN.

**JUDGES:** DAVID F. HAMILTON, JUDGE, United States District Court, Southern District of Indiana.

**OPINION BY:** DAVID F. HAMILTON

**OPINION**

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Monica Morin has sued her former employer, defendant, La Petite Academy, Inc., under the American with Disabilities Act, *42 U.S.C. § 12101, et seq.* La Petite is a national provider of pre-school and childcare services. Morin has a serious learning disability. La Petite employed her as a teacher's aide from March 22, 1999, until August 3, 1999, when she resigned. Morin alleges that La Petite constructively discharged her and discriminated against her on the basis of her learning disability. Morin also contends that La Petite failed to provide a reasonable accommodation for her disability.

La Petite has moved for summary judgment. As explained below, Morin has not presented sufficient evidence to establish a genuine issue of material fact on her claim for constructive discharge. Her claim for failure to accommodate is barred by her failure to include it in her EEOC charge. La Petite is therefore entitled to summary judgment [*2] on all of Morin's claims.

*Standard for Summary Judgment*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986)*. Summary judgment is not a substitute for a jury's determination about credibility or about whether a reasonable inference should be drawn from the evidence. Under *Rule 56(c) of the Federal Rules of Civil Procedure*, the court should grant summary judgment if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See *Fed. R. Civ. P. 56(c)*; *Pafford v. Herman, 148 F.3d 658, 665 (7th Cir. 1998)*.

On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, that the party believes demonstrate the absence of a genuine issue of material fact. *Fed. R. Civ. P. 56(c)*; *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)*. [*3] Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*.

In determining whether a genuine issue of material fact exists, the court must construe all evidence in the light most favorable to, and draw all reasonable inferences in favor of, the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*; *Haefling v. United Parcel Service, Inc., 169 F.3d 494, 497 (7th Cir. 1999)*. However, the existence of "some alleged factual dispute between

Case 1:08-cv-00549    Document 11-4    Filed 03/31/2008    Page 3 of 6

Page 3
2001 U.S. Dist. LEXIS 18387, *; 12 Am. Disabilities Cas. (BNA) 841

the parties," or "some metaphysical doubt" does not create a genuine issue of fact. *Piscione v. Ernst & Young, L.L.P., 171 F.3d 527, 532 (7th Cir. 1999)*. The proper inquiry is whether, on the evidence before the court, a rational trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See *Jordan v. Summers, 205 F.3d 337, 342 (7th Cir. 2000)*.

*Undisputed Facts*

The following facts are either undisputed or reflect the evidence of disputed [*4] facts in the light reasonably most favorable to Morin, the non-moving party. Morin suffers from cognitive learning disabilities. A case analysis was done on Morin in 2001. "Cognitive ability [was] assessed as an IQ of 64, which is in the lowest 1% of the population and reflects significant impairment to daily reasoning skills." Pl. Ex. 6 at 27. Doctors found her handwriting to be poor, below the first or second grade level. *Id.* at 17. Morin described herself as "emotional" and sometimes "child-like." *Id.* Her mother described her as:

> Socially, she is out of step with people . . . . She is leery about doing new things. Apparently, change is threatening to her. That is, the more she has to adjust to different personalities, the more stressed she becomes. Monica is frightened easily. . . . She does not think -- she just reacts.

*Id.* at 17-18. The consultants wrote:
> She requires assistance to use good judgment and common sense reasoning. Monica requires assistance with problem-solving.
>
> * * *
>
> She had difficulties with social judgment, mental arithmetic, verbal comprehension, rote memory, visual-spatial coordination, and separating essential from [*5] nonessential details. The test results appear valid. Monica may learn new skills best with extensive and repetitive training, one-on-one assistance, modeling, verbal guidance, positive reinforcement, and praise.

*Id.* at 21, 22-23.

Morin's disability limits her in daily life, but she is able to perform some jobs. At key times in this case, she received employment support from a counselor through Goodwill Industries of Central Indiana, Barbara Barnett, who played a central role in the communications between La Petite and Morin.

In March 1999, La Petite hired Morin. Viewing the evidence in the light reasonably most favorable to Morin, she was hired as a Teacher's Assistant/Aide and was assigned to assist the teachers in the classroom for four and five year old children at a La Petite facility. Pl. Ex. 1 at 2. [1] In late June 1999, Erin Jackson became the director of the facility. In June, Morin expressed concerns to Jackson about the difficulty she was having when she was removed from the five year old room to supervise the summer camp room for older children (ages 6-12). Jackson Dep. at 24-25; see also Morin Dep. at 41. Morin stated that, because of her disability, she found [*6] this assignment difficult. When put into the older children's room, Morin claimed she was overwhelmed, had headaches, became tense, and tended to lose control. Pl. Ex. 2 at 6. She told Jackson about her disability, explaining that she found the older children hard to engage and that working with them was frustrating for her. Jackson Dep. at 24-25.

---

1  The parties dispute Morin's precise position at La Petite. Taking the evidence in the light most favorable to Morin, a jury could find that Morin was hired to work as a Teacher's Aide. On her application, Morin wrote that she desired the position of "Teacher's Assistant" or "Teacher's Aide" that was advertised in the newspaper. Her initial interviewer for the job described the position as "Teacher's Assistant." Pl. Ex. 1 at 2. Job counselor Barbara Barnett's initial notes from her contact with La Petite's Erin Jackson refer to Morin as a "Teacher's Aide." Pl. Ex. 2 at 7. Morin's employee status report originally identified her as something other than "Teacher" but was changed to say "Teacher." See Pl. Ex. 9. In responding to Morin's EEOC charge, La Petite described Morin as an "assistant teacher" and a "Teacher's Assistant." Pl. Ex. 11 at 1 & 2.

[*7] Morin contacted her job counselor, Barbara Barnett, to talk with La Petite and to act as her advocate. Barnett met with La Petite's Jackson. Barnett's goal for the meeting was to help maintain Morin's employment. Barnett Dep. at 84. Jackson told Barnett during one meeting that La Petite was "planning to let Monica go" because she was "not performing the job duties." Barnett Dep. at 81. Jackson and Barnett discussed the deficiencies in Morin's job performance. Jackson told Barnett that Morin was not writing and implementing lesson plans and was not watching the children, and that she was using a cellular telephone during class, calling the

Case 1:08-cv-00549   Document 11-4   Filed 03/31/2008   Page 4 of 6

Page 4
2001 U.S. Dist. LEXIS 18387, *; 12 Am. Disabilities Cas. (BNA) 841

children names, refusing to let them have drinks, telling children she would not be their friend, lining them up before closing, and refusing to be flexible. *Id.* at 81-82.

Jackson explained to Barnett that the state required a certain teacher-child ratio. For the four and five year old room, the ratio was one teacher to 15 children. Pl. Ex. 2 at 10. Jackson further stated that there were only 12 children in Morin's room, so only one teacher was needed. Barnett Dep. at 85-86. Jackson said that Morin would have to do all the teaching tasks if [*8] she were to stay on with that particular La Petite. Pl. Ex. 2 at 10. Morin would not have been able to perform all the responsibilities of a principal teacher who would handle a class by herself. Jackson was then looking to fill Morin's class with one teacher, not two, and was interviewing for the position. Pl. Ex. 2 at 11.

Jackson and Barnett discussed the fact that "La Petite needed to have its teachers cover classrooms other than those to which they were normally assigned." Statement of Mat. Fact 16. Barnett asked Jackson to keep Morin in the four and five year old classroom, but Jackson said she would continue to move Morin if Jackson needed help in other classrooms. Barnett Dep. at 89-90. Jackson told Barnett: "I have to do what's best for the kids, not Monica." Pl. Ex. 2 at 8.

Sharon Duke, La Petite's regional director, also got involved. She told Barnett that "if Monica wanted to become a teacher's aide, a job that has less responsibilities, she would keep her with La Petite," but not at the same facility. Pl. Ex. 2 at 10. Jackson and Duke also told Barnett "that they could not keep two people in that classroom, that the teacher's aide job had less responsibilities. You did [*9] not have to do like the lesson plans, write those out, things like that." Barnett Dep. at 66, 82-83. Jackson and Duke said that such positions did not exist at that location, and they suggested a transfer to another location. *Id.* at 66, 82-83. Barnett asked Jackson if she knew of any positions available at any other La Petite facilities. Jackson did not, but she gave Barnett a copy of the list of Indianapolis La Petite locations and their telephone numbers. Jackson Dep. at 45-46. Jackson did not have the authority to hire employees at other La Petite facilities.

Morin tendered her resignation in early August, probably August 1st. See Morin Dep. at 45-46. She told Jackson that she was leaving to pursue other employment. Jackson Dep. at 52. Jackson agreed to allow Morin to remain at La Petite until September 1999 while she searched for another job. Barnett Dep. at 86-87; Pl. Ex. 2 at 11. Barnett offered to come to the facility on a weekly basis to assist Morin at La Petite until Morin was able to secure other employment. Barnett Dep. at 86-88.

After tendering her resignation, Morin asked and was allowed to continue to work in the five year old classroom for two more days until [*10] the children "graduated." Her last day at La Petite was August 3, 1999.

*Discussion*

I. *Constructive Discharge Claim*

Morin's employment with La Petite ended just after she submitted her resignation. Morin contends her resignation should be treated as if she had been fired. The undisputed facts defeat her claim for constructive discharge.

In *Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878, 886 (7th Cir. 1998)*, the Seventh Circuit recounted the essential requirements for a claim for constructive discharge:

> "To state a claim for constructive discharge, a plaintiff needs to show that his working conditions were so intolerable that a reasonable person would have been compelled to resign." *Rabinovitz v. Pena, 89 F.3d 482, 489 (7th Cir. 1996)*. Not only must conditions be intolerable; for a Title VII constructive discharge claim to succeed, they must be intolerable because of unlawful discrimination. See *Chambers v. American Trans Air, Inc., 17 F.3d 998, 1005* (7th Cir.), *cert. denied*, 513 U.S. 1001, 130 L. Ed. 2d 419, 115 S. Ct. 512 (1994). More than ordinary discrimination is necessary to [*11] establish a constructive discharge claim; in the "ordinary" case, an employee is expected to remain employed while seeking redress. See *Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1015 (7th Cir. 1997)*.

The Seventh Circuit has not yet decided whether a constructive discharge claim is cognizable under the ADA. Thus far it has assumed that a claim is possible, and it has provided guidance on how such claims should be analyzed:

> A claim of discriminatory constructive discharge would require a plaintiff to demonstrate first that she was constructively discharged -- that the employer made the working conditions so intolerable as to force a reasonable person to leave. . . . Once that showing has been made, the plaintiff would have to establish

Case 1:08-cv-00549   Document 11-4   Filed 03/31/2008   Page 5 of 6

Page 5
2001 U.S. Dist. LEXIS 18387, *; 12 Am. Disabilities Cas. (BNA) 841

that she was constructively discharged on account of her disability.

*EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 440 (7th Cir. 2000) (citation omitted) (fact issues on disability status did not preclude court from affirming summary judgment on constructive discharge claim).

Morin cannot meet this standard. The undisputed facts show that Morin was never told that she was going to be fired, only **[*12]** that she might need to transfer to another facility if she was unable to help out with older children. In her deposition, Morin testified as follows:

> Q: Did anyone at La Petite tell you you were fired?
>
> A They weren't going to fire me, but they wanted to transfer me.
>
> Q: Okay.
>
> A And to me --
>
> Q: Tell us about that. Where did they want to transfer you to?
>
> A To me that means the same thing as fired because I'm not -- I'm not being able to stay in the same building.

Morin Dep. at 44.

The court assumes that Morin's confusion about the difference between being fired and being transferred is a reflection of her learning disability. The undisputed facts show that, at the time Morin resigned, La Petite was still talking with Morin (or her counselor Barnett) about accommodating her disability by transferring her to another location where she would not need to work with older children. As a matter of law, the possibility of a transfer to another location ordinarily does not even amount to an adverse employment action, let alone action sufficient to support a claim for constructive discharge. [2]

> 2   In unusual cases, a transfer may be accompanied by changes in duties or other conditions of employment so negative as to amount to an adverse action. See, *e.g., McDonnell v. Cisneros,* 84 F.3d 256, 263 (7th Cir. 1996) (material adverseness of transfer was conceded); *Dahm v. Flynn,* 60 F.3d 253, 257 (7th Cir. 1994) (plaintiff's job underwent "a dramatic downward shift in skill level"); *Collins v. Illinois,* 830 F.2d 692, 704 (7th Cir. 1987) (lateral transfer was really a demotion; the plaintiff lost her office and her professional listing as a library consultant). In some extreme cases, a transfer can even rise to the level of constructive discharge. See, *e.g., Parrett v. City of Connersville,* 737 F.2d 690, 693-94 (7th Cir. 1984) (affirming verdict finding that a transfer without a reduction in pay was a constructive discharge where the plaintiff, an "ambitious professional," was given no responsibilities and was assigned to a windowless room that formerly had been a storage closet). Nothing in the evidence in this case suggests that any possible transfer of Morin would have come close to such a standard.

**[*13]** For purposes of summary judgment, there is a factual dispute about whether La Petite manager Erin Jackson told Morin's job coach in July 1999 that La Petite was planning to let Morin go. That factual dispute is not material to the claim for constructive discharge, for there is no evidence that Morin ever heard that La Petite was planning to fire her. In a claim for constructive discharge, the issue is how the employment situation appeared to a reasonable person in the plaintiff's position, knowing what the plaintiff knew and experiencing what the plaintiff experienced. See *Rodgers v. Western-Southern Life Ins. Co.,* 12 F.3d 668, 677 (7th Cir. 1993) ("this circuit has adopted a test that focuses on the impact of the employer's actions on a reasonable person"); *Saxton v. American Tel. & Tel. Co.,* 10 F.3d 526, 537 (7th Cir. 1993) (whether plaintiff's work environment meets standard for constructive discharge is determined from the viewpoint of a reasonable employee).

Even if the court or jury were to assume that La Petite was planning to fire Morin (as opposed to transferring her to another facility), that would not establish a claim for constructive **[*14]** discharge because Morin did not know about any plans to fire her. All that Morin knew was that there was a possibility that she would be transferred to another facility where she would not need to work with older children. A jury could not reasonably find that the possibility of such a transfer made Morin's work so intolerable that she had to resign. See *EEOC v. Sears, Roebuck & Co.,* 233 F.3d at 440-41 (affirming summary judgment on constructive discharge claim under ADA; employer's denial of requested accommodations and refusal to give plaintiff her desired work schedule did not support claim for constructive discharge; also, plaintiff could have continued dialogue with employer). There was no constructive discharge here.

II. *Failure to Accommodate Claim*

Morin also claims that La Petite violated the ADA by failing to provide a reasonable accommodation for her disability. Morin contends that La Petite should have accommodated her by ensuring that she was never assigned to work with children older than five, so that other

Case 1:08-cv-00549  Document 11-4  Filed 03/31/2008  Page 6 of 6

Page 6
2001 U.S. Dist. LEXIS 18387, *; 12 Am. Disabilities Cas. (BNA) 841

employees -- not Morin -- would have been moved to other classrooms when needed.

La Petite seeks summary judgment on Morin's claim for **[\*15]** failure to accommodate on the ground that it was not included in Morin's charge filed with the EEOC. Morin's EEOC charge claimed that she was constructively discharged. It did not mention a failure to accommodate. Def. Ex. E.

The Seventh Circuit has held that a failure to accommodate claim "is separate and distinct from a claim of discriminatory treatment under the ADA," so that an EEOC charge claiming discriminatory treatment cannot support a separate claim for failure to accommodate. *Green v. National Steel Corp., 197 F.3d 894, 898 (7th Cir. 1999)* (affirming summary judgment for employer on ADA claim for failure to accommodate that was not included in EEOC charge claiming termination based on disability). *Green* is squarely on point here and entities La Petite to summary judgment on the failure to accommodate claim. ³

> 3  Morin also did not assert the failure to accommodate claim in her complaint. With her papers opposing summary judgment, she moved to amend her complaint to add that claim. La Petite opposed the amendment. *Rule 15(a) of the Federal Rules of Civil Procedure* provides that leave to amend shall be freely given when justice so requires. When a motion to amend the complaint is filed long after the agreed deadline for such amendments in the case management order, and in response to a summary judgment motion, a court may and should consider whether the amendment has been unduly delayed and would cause unfair prejudice to the opposing party. See, *e.g., Sanders v. Venture Stores, Inc., 56 F.3d 771, 774 (7th Cir. 1995)*; see also *Bethany Pharmacal v. QVC, Inc., 241 F.3d 854, 861 (7th Cir. 2001)* (district court need not allow an amendment where there is undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or when the amendment would be futile). In this case, Morin does not claim that the amendment was based on any new information. The proposed amendment comes too late and in light of *Green* is futile. Accordingly, Morin's motion for leave to amend her complaint is hereby denied.

**[\*16]** For these reasons, defendant La Petite's motion for summary judgment is hereby granted. The court will enter final judgment in favor of La Petite.

So ordered.

Date: November 8, 2001

DAVID F. HAMILTON, JUDGE

United States District Court

Southern District of Indiana