LEXSEE 1999 U.S. DIST LEXIS 14756



Analysis
As of: Apr 13, 2008

**PAMELA KAUSE, Plaintiff, v. THE ALBERTO-CULVER COMPANY, Defendant.**

**No. 97 C 3085**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1999 U.S. Dist. LEXIS 14756*

**September 8, 1999, Decided
September 10, 1999, Docketed**

**DISPOSITION:** [*1] Defendant's motion for summary judgment [26-1] granted as to Count II and denied without prejudice in all other respects.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Materiality*
[HN1] Summary judgment is appropriate when no genuine issue as to any material fact exists, and the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. This standard is applied with added rigor in employment discrimination cases, in which intent and credibility are crucial issues.

*Civil Procedure > Summary Judgment > General Overview*
[HN2] In deciding whether to grant summary judgment, the court construes the evidence and all inferences which can be reasonably drawn therefrom in the light most favorable to the nonmovant.

*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN3] U.S. Dist. Ct. (N.D. Ill.) R. 12(M) requires the party moving for summary judgment to submit a statement of undisputed material facts with specific citations to the record.

*Civil Procedure > Summary Judgment > Supporting Materials > General Overview*
[HN4] U.S. Dist. Ct. (N.D. Ill.) R. 12(N) requires the nonmovant to file a response to each numbered paragraph in the U.S. Dist. Ct. (N.D. Ill.) R. 12(M) statement and a statement of additional facts, consisting of short, numbered paragraphs. U.S. Dist. Ct. (N.D. Ill.) R. 12 expressly permits the denial of a summary judgment motion for non-compliance with its terms.

*Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships*
*Labor & Employment Law > Discrimination > Disability Discrimination > Proof > Burdens of Proof > Employee Burdens*
[HN5] To establish a prima facie case, an Americans with Disabilities Act (ADA) plaintiff must establish (1) that she is disabled within the meaning of the ADA; (2) that her work performance met her employer's legitimate expectations; (3) that she was subjected to an adverse

1999 U.S. Dist. LEXIS 14756, *1

employment action; and (4) that the circumstances surrounding the action indicate that it is more likely than not that the adverse employment action was taken because of her disability.

***Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > Major Life Activities***
[HN6] Under the Americans with Disabilities Act, a disability is (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment. *42 U.S.C.S. § 12102*.

***Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > Disabilities > Impairments > Major Life Activities***
[HN7] To qualify as a disability within the meaning of the Americans with Disabilities Act, the plaintiff's impairment must substantially limit one or more major life activities such that she is either unable to perform, or significantly restricted as to the condition, manner or duration under which she can perform a major life activity as compared to an average person in the general population.

***Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview***
[HN8] "Major life activities" are those basic activities that the average person in the general population can perform with little difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, working, sitting, standing, lifting, reaching. *29 C.F.R. § 1630.2(i)*. This list is not exhaustive.

***Civil Procedure > Summary Judgment > Supporting Materials > Affidavits***
[HN9] Parties cannot thwart the purposes of *Fed. R. Civ. P. 56* by creating "sham" issues of fact with affidavits that contradict their prior depositions.

***Labor & Employment Law > Discrimination > Disability Discrimination > Federal & State Interrelationships***

[HN10] In evaluating limitations on lifting and bending, case law makes clear that the nature, severity, duration, and permanence of the impairment are highly relevant in assessing whether or not a disability claim has been made out.

***Labor & Employment Law > Discrimination > Disability Discrimination > Coverage & Definitions > General Overview***
[HN11] Although the regulations indicate that lifting is a major life activity, *29 C.F.R. § 1630.2(i)*, the case law indicates that, considering the average person's ability, difficulty lifting thirty pounds is insufficient to constitute a disability.

***Labor & Employment Law > Discrimination > Disparate Treatment > General Overview***
[HN12] A Title VII of the Civil Rights Act, 42 U.S.C.S. § 2000(e) et seq., claim is within the scope of the Equal Employment Opportunity Commission (EEOC) charge if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.

***Labor & Employment Law > Discrimination > Disparate Treatment > General Overview***
[HN13] While a plaintiff must specifically describe the offending conduct to the Equal Employment Opportunity Commission (EEOC), courts should not impose strict technical standards on EEOC charges filed by non-lawyers.

**COUNSEL:** For PAMELA M KAUSE, plaintiff: Kenneth A. Jatczak, John P DeRose, Anthony T. Capua, John P. De Rose & Associates, Burr Ridge, IL.

For ALBERTO-CULVER COMPANY, defendant: John Peirce Morrison, Emma B. Rodriguez Brittain, Bell, Boyd & Lloyd, Chicago, IL.

**JUDGES:** JOAN B. GOTTSCHALL, United States District Judge.

**OPINION BY:** JOAN B. GOTTSCHALL

**OPINION**

## MEMORANDUM OPINION AND ORDER

Plaintiff Pamela Kause ("Kause") has brought this action against her former employer the Alberto-Culver Company ("Alberto-Culver"), alleging gender discrimination (hostile work environment and disparate treatment) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq.* ("Title VII"), disability discrimination in violation of the Americans With Disabilities Act, *42 U.S.C. § 12111* ("ADA"), and retaliation. Defendant Alberto-Culver has moved for summary judgment on all counts. For the reasons stated below, defendant's motion is granted in part and denied in part.

## I. PRELIMINARY MATTERS

[HN1] Summary [*2] judgment is appropriate when "no genuine issue as to any material fact" exists, and "the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. This standard is applied with "added rigor in employment discrimination cases, in which intent and credibility are crucial issues." *Drake v. Minnesota Mining & Mfg. Co., 134 F.3d 878, 883 (7th Cir. 1998)*. [HN2] In deciding whether to grant summary judgment, the court construes the evidence and all inferences which can be reasonably drawn therefrom in the light most favorable to the nonmovant. *Giannopoulos v. Brach & Brock Confections, Inc., 109 F.3d 406, 410 (7th Cir.1997)*.

[HN3] Local Rule 12(M) requires the party moving for summary judgment to submit a statement of undisputed material facts with specific citations to the record. The purpose of a 12(M) statement is to enable "the non-movant to identify on a paragraph-by-paragraph basis just which facts are and which are not in dispute . . ., thus facilitating the court's ability to smoke out both the existence or nonexistence of genuine issues of fact and their materiality (that is, whether or not any factual differences are outcome-determinative)." [*3] *Servin v. GATX Logistics, Inc., 187 F.R.D. 561, 1999 U.S. Dist. LEXIS 11962, 1999 WL 558107*, *1 (N.D. Ill. 1999) (quoting Prudential Ins. Co. of America v. Tomaszek, 1992 U.S. Dist. LEXIS 1534, 1992 WL 26734, at *2 (N.D. Ill. Feb. 7, 1992))*. Likewise, [HN4] Rule 12(N) requires the nonmovant to file a response to each numbered paragraph in the 12(M) statement and a statement of additional facts, consisting of short numbered paragraphs.

Local Rule 12 "expressly permits the denial of a summary judgment motion for non-compliance with its terms." *Id. (quoting Tomaszek*, 1992 WL 26734, at *2.

Defendant has prepared its Rule 12(M) statement in this case in a manner that defeats the purpose of the rule. Each numbered paragraph in defendant's 12(M) statement contains multiple assertions, sometimes amounting to a half page of material. Plaintiff responds by admitting some and denying some of the allegedly undisputed facts within each paragraph, defeating the rule's purpose of allowing the court to make a quick assessment of whether each allegedly material undisputed fact is admitted or denied. Moreover, defendant has not segregated its facts by count or claim. Rather, it has provided the [*4] court with page after page of evidentiary detail, essentially shifting to the court--with no assistance from the defendant--the critical task of determining what alleged facts relate to what claims and what is or is not material with respect to each of plaintiff's claims.

The court acknowledges that defendant's submission in this case is not atypical. Defendant has done what defendants frequently do. However, having wrestled with such Rule 12(M) statements over many years, this court does not believe that it can do so any longer and meet the demands of its docket. The rule requires "a statement of material facts as to which the moving party contends there is no genuine issue" in the form of "short numbered paragraphs." It does not require (or in this court's view permit) lengthy paragraphs composed of mixed material and immaterial evidentiary detail. And when, as here, there are multiple claims in a case, defendant's failure to segregate its allegedly undisputed facts by claims leaves the court with a cumbersome and difficult task of assessing materiality or immateriality in a vacuum.

An example of the problems of the 12(M) statement in this case can be readily seen in paragraph [*5] 1 of the 12(M) statement. After an undisputed assertion concerning the business of the defendant, defendant describes the dates of plaintiff's employment, asserting among a number of immaterial details that plaintiff "quit in August of 1997 to finish her nursing degree and accept entry-level positions with area hospitals in pursuit of a career in nursing." In support of this assertion, defendant has directed the court to seven pages of plaintiff's deposition, which the court has dutifully read. None of them remotely support the assertion that plaintiff quit her job to pursue a nursing career; rather, plaintiff asserts in

these pages that she left her job because she could not keep up with a quota that had been imposed on her. As further support, defendant provides the affidavit of defendant's personnel manager who asserts, with no indication of any foundation, that plaintiff "voluntarily quit." Plaintiff disputes this. Now, it may be that the issue of whether plaintiff was forced to quit because she could not keep up with a quota or quit to pursue another career is immaterial, but defendant has represented that it is material and has required the court to sift through pages of irrelevant [*6] materials looking for the evidentiary support for its assertion.

Also in paragraph 1, defendant asserts that Kause's "last eight months of employment with Alberto-Culver are not at issue in this lawsuit." (Is this a material undisputed fact?) It cites as support for this assertion two EEOC charges filed by plaintiff and her Second Amended Complaint (defendant does not direct the court to where in these documents the support for this assertion can be found). Plaintiff denies this assertion with no record citation, also a violation of the rule. In the court's view, since defendant has not adequately provided support for its assertion (or if it has, it has not properly cited to it), the court can hardly make a finding against plaintiff for her failure to follow the rule. Again, this issue may not be material. But by putting it in its Rule 12(M) statement, defendant is representing that it is material and asking the court to address it. [1]

> [1]   Plaintiff's Response to the Rule 12(M) statement is also in flagrant violation of the rule. Plaintiff sprinkles her response with assertions of additional facts, assertions which the rule requires be put in a statement of additional facts, not in the response to the 12(M) statement.

[*7]   Defendant's 12(M) statement includes assertions as to which defendant admits there is a dispute. For instance, in paragraph 16, defendant asserts, "Kause claims Sarabia yelled at her during this counseling session. Sarabia did not yell at Kause." Defendant then asserts that "Kause surreptitiously tape recorded the conversation and it demonstrates the absence of yelling," citing to four pages of Kause's deposition. Since plaintiff responds that this was not the conversation she taped, the court has studied the four deposition pages defendant cites. While they indicate that plaintiff taped some conversation, they do not indicate that plaintiff taped the conversation in question. Is this material? If not, it should

not be in the 12(M) statement. If it is, it is disputed.

The court's difficulty in dealing with this case is made worse by the fact that defendant has chosen to argue, in conjunction with its argument that there are no material factual disputes, that certain claims should be dismissed as beyond the scope of the EEOC charge. Thus, to resolve the motion for summary judgment without addressing a myriad of potentially irrelevant issues of fact, the court would first have to first [*8] decide a number of issues of law. It might then be in a position to disregard many of the allegedly material undisputed facts since various issues might have been eliminated from the case. These issues of law should have been addressed before the parties embarked on summary judgment.

The court has little doubt that there are claims in this case that should not go to trial. But the court will not sift through pages of evidentiary detail--with multiple assertions in each paragraph--trying to figure out what fragment of all this information is material to each claim, and it will not take on the burden of dealing with a 12(M) statement that on so many points is as inadequately supported. Indeed, as indicated above, defendant's 12(M) statement admits that some of its assertions are disputed.

Summary judgment motions in fact-intensive cases like employment discrimination cases are responsible for the huge motion backlogs that litigants complain about. The court adopted Rule 12(M) and 12(N) to help courts quickly identify what is disputed and what is not so that claims that do not require a trial can be readily identified. It is becoming all too common for Rule 12(M) statements to be presented [*9] not in the form of "a statement of material facts as to which the moving party contends there is no genuine issue," but in the form of an argument, with many debatable characterizations of the evidence and with record citations that do not invariably provide support for what is being asserted. The 12(M) statement in this case suffers from these problems and imposes an unmanageable burden on the court.

Except to the extent that the court denies defendant's motion for summary judgment on the scope of the EEOC charge and grants defendant's motion for summary judgment on plaintiff's claim that she is disabled, as to which issues the court was able to identify the relevant facts and determine the extent to which there were factual disputes, the motion for summary judgment is denied without prejudice. If defendant chooses to refile its

motion, it should organize its 12(M) statement according to each of plaintiff's contentions so that defendant, and not the court, carries the burden of determining what evidence is relevant to what claim. The 12(M) statement should contain nothing other than material undisputed facts relevant to each claim. Likewise the plaintiff should take heed and ensure [*10] that her 12(N) response responds directly to each of defendant's statements with an admission or denial and supporting citations to the record. Any additional facts should be confined to the 12(N)(3)(b) statement of additional facts. [2]

> 2    Although the court declines to rule on defendant's motion for summary judgment on Kause's gender discrimination claims because of the sorry state of the 12(M) and 12(N) statements, the court is highly skeptical of Kause's hostile work environment claim. She does not allege that Sarabia acted sexually toward her. Thus, as in a same-sex harassment case, she must show that his actions toward her were because of her sex. *Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 118 S. Ct. 998, 1002, 140 L. Ed. 2d 201 (1998); Shermer v. Illinois Dept. of Transportation, 171 F.3d 475, 478 (7th Cir. 1999).* The record as it stands shows that Kause had worked with Sarabia and the other warehouse supervisors for seven years previously without incidents of sex discrimination. It appears that Sarabia did not begin harassing her until she returned from medical leave. This suggests that the change in his behavior was brought on by something other than her status as a woman.

[*11] **II. FACTS**

The material facts which the court finds to be undisputed are as follows.

On March 6, 1986, Alberto-Culver hired plaintiff, Pamela Kause, to work in its warehouse. She worked for Alberto-Culver until she terminated her employment in August of 1997. Throughout her tenure at Alberto-Culver, Kause held positions covered by the collective bargaining agreement between her employer and the United Steelworkers of America, Local No. 3911.

Kause began work in the Parcel Post Department ("Parcel Post") in 1989. She took over the head position in Parcel Post, Parcel Post Lead, in 1990. Parcel Post's role at Alberto-Culver was to assist other divisions by

picking up envelopes, mailers, samples, and other items and prepare them to be sent out. From 1993 through 1997 Kause was supervised by Bill Friebus, supervisor, and Tom Sarabia, the warehouse manager.

In June of 1996, Kause injured her back in a non-work-related car accident. She took a medical leave of absence from her job at Alberto-Culver. She returned to work in October of 1996 and resumed her position as Lead. Before she was allowed to resume working, however, she was sent to the company nurse, Cathy Junor, [*12] for a return-to-work fitness evaluation. Junor sent her to Rush-Presbyterian-St. Luke's Occupational Health Center occupational health clinic ("Health Center") for an evaluation. The Health Center put Kause on a 30 pound weight-lifting restriction for several weeks. She was advised to avoid repetitive bending and to increase progressively her weight-lifting tolerance.

Sarabia was informed of Kause's work restrictions. He gave her a back support belt and told her to wear it while at work. Kause complained to Sarabia and Junor that the belt did not fit her. One week later, Junor sent Kause back to the Health Center where she was fitted for a new belt at the company's expense. Aside from her complaints about the ill-fitting belt, Kause did not ask for any accommodation from the Union or Alberto-Culver relating to her back injury. Kause Depo. 34, 162.

Kause's back injury and the medical restrictions stemming from the injury were temporary. Aside from the weight restrictions, which expired December 1, 1996, plaintiff had no other physical limitations that affected her work or any other major life activity. Kause Depo. 43-45. The weight restrictions did not limit Kause's ability to do [*13] her work, nor did they interfere with any other part of her life. Kause Depo. 43-45.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on December 10, 1996, complaining of sex and disability harassment and discrimination. Plaintiff's charge is based on alleged harassment and threats by Sarabia.

**III. COUNT II -- DISABILITY DISCRIMINATION**

[HN5] To establish a prima facie case, an ADA plaintiff must establish (1) that she is disabled within the meaning of the ADA; (2) that her work performance met her employer's legitimate expectations; (3) that she was

subjected to an adverse employment action; and (4) that the circumstances surrounding the action indicate that it is more likely than not that the adverse employment action was taken because of her disability. *Weigel v. Target Stores, 122 F.3d 461, 465 (7th Cir. 1997).*

[HN6] Under the ADA, a disability is (1) a physical or mental impairment that substantially limits one or more of the major life activities; [3] (2) a record of such impairment; or (3) being regarded as having such an impairment. *42 U.S.C. § 12102.* Plaintiff claims that she qualifies as disabled [*14] under the first category--physical impairment that substantially limits a major life activity. [HN7] To qualify as a disability within the meaning of the ADA, Kause's impairment must substantially limit one or more major life activities such that she "is either unable to perform, or significantly restricted as to the condition, manner or duration under which [she] can perform a major life activity as compared to an average person in the general population." *Davidson v. Midelfort Clinic, Ltd., 133 F.3d 499, 505, 505-06 (7th Cir. 1998).*

> 3    [HN8] "'Major life activities' are those basic activities that the average person in the general population can perform with little difficulty. Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, . . . working[,] . . . sitting, standing, *lifting*, reaching." *29 C.F.R. § 1630.2(i)* (emphasis added). This list is not exhaustive. *Id.*

Plaintiff argues that her back injury substantially [*15] limits her major life activities in that she is unable to lift heavy objects. The only evidence submitted to establish Kause's back injury as a disability was Kause's deposition and Kause's affidavit. In her deposition, Kause admitted that all medical restrictions were removed by the end of December 1996:

> Q: And the only limitation that you had at the time that you returned from your leave of absence was a weight restriction?
>
> A: And bending, something to do with bending and twisting.
>
> Q: And that weight restriction and bending restriction were progressively eliminated over the next month or so?

> A: Yes.
>
> Q: And so let's say by the first of the year, as far as you're aware, there would be no restrictions on your abilities to perform your job; is that correct?
>
> A: As far as I'm aware.
>
> ***
>
> Q: By December 1, 1996, were you no longer subject to any medical restrictions concerning your back?
>
> A: None that I'm aware of.
>
> Q: And you felt that you were able to do your job at that time; is that correct?
>
> A: Yeah.
>
> ***
>
> Q: And your weight restrictions didn't substantially limit your ability to work, correct?
>
> A: Correct.
>
> Q: And your weight restrictions [*16] didn't substantially restrict you in other facets of your life, correct?
>
> A: Correct.

Kause Depo. at 43-45. Thus, her deposition testimony indicates that she was able to do her job without difficulty after approximately three months, when the 30 pound weight restriction was removed.

Apparently unsatisfied with the implications of her testimony, Kause attempts to contradict it in her affidavit. [HN9] "Parties cannot thwart the purposes of *Rule 56* by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Illinois v. Allied Signal Safety Restraint Systems, 75 F.3d 1162, 1168 (7th Cir. 1996).* Nonetheless, even if the court did consider her affidavit, it would be wholly unavailing. She states that she still has trouble lifting:

> My job was (sic) Lead of Parcel Post

had me doing a great amount of lifting. The amount of lifting that I engaged in after my return from medical leave regularly caused pain to shot (sic) to my buttocks/lower back and caused my toes to goes (sic) numb. The pain in my buttocks/lower back radiates to my legs which made it difficult to walk at times. I did the lifting, despite the pain, because [*17] I wanted to keep my job so that I could pay my bills. My back injury continues to limit my daily activities. Even today, I have limited my daily activity because if I engage in too much lifting or bending, my back locks up and I am in great pain for several days.

Kause Aff. P10. She complains that she experiences pain when she engages in "too much lifting or bending," but does not explain the frequency or magnitude of her difficulty. [HN10] In evaluating limitations on lifting and bending, case law makes clear that the nature, severity, duration and permanence of the impairment are highly relevant in assessing whether or not a disability claim has been made out. *Hamm v. Runyon, 51 F.3d 721, 725 (7th Cir. 1995)*. Kause's affidavit says nothing about these issues and is thus too vague to create an issue of fact. When considered in conjunction with her deposition testimony, it is clear that Kause's affidavit cannot create a triable issue of fact.

Even if Kause were still subject to the thirty pound weight restriction, her claim could not survive. [HN11] Although the regulations indicate that lifting is a major life activity, *29 C.F.R. § 1630.2(i)*, the case law indicates that, [*18] considering the average person's ability, difficulty lifting of the severity she describes is insufficient to constitute a disability. *Mckay v. Toyota Motor Mfrg., 110 F.3d 369, 370 (6th Cir. 1997)* (10 pound lifting restriction not a disability); *Williams v. Channel Master Satellite Sys. Inc., 101 F.3d 346, 348* (4th Cir.), *cert. denied, Williams v. Avnet, Inc., 520 U.S. 1240, 137 L. Ed. 2d 1048, 117 S. Ct. 1844 (1996)* (25 pound lifting restriction does not substantially limit one's ability to lift, work, or perform any other major life activity, particularly in light of average person's ability); *Ray v. Glidden, 85 F.3d 227, 229 (5th Cir. 1996)* (inability to lift 44-56 pound containers continuously all day does not render person substantially limited in major life activity of working); *Stevo v. CSX Transportation,*

*Inc., 1997 U.S. Dist. LEXIS 16781, No. 95 C 7449, 1997 WL 667816 (N.D. Ill. Oct. 23, 1997)* (40 pound weight restriction not a disability); *Schroeder v. University of Illinois at Chicago, 1997 U.S. Dist. LEXIS 14301, 96 C 6020, 1997 WL 587699 (N.D. Ill. Sept. 9, 1997)* (30 pound restriction not disability). For this reason as well, [*19] Kause has not demonstrated a genuine issue of material fact regarding her disability.

## IV. SCOPE OF THE EEOC CHARGE

Alberto-Culver argues that portions of plaintiff's allegations should be excluded from the court's consideration because they exceed the scope of her second EEOC charge, alleging retaliation. The court disagrees.

To facilitate EEOC investigations and to give notice to defendants of the charged conduct, Title VII requires Kause to file an EEOC charge that encompasses the claims she plans to raise in her complaint to the district court. *Cheek v. Western and Southern Life Ins., 31 F.3d 497, 499 (7th Cir.1994)*. Plaintiff's EEOC retaliation charge, *in toto*, states:

I. I have been employed by the Respondent since 1986 and my current position is that of Line Lead in Parcel Post. On December 10, 1996 I filed a charge of discrimination with the EEOC (Charge #: 210970809), and since I have filed this charge, I have been increasingly harassed by the manager of my department, Mr. Tom Sarabia. On December 17, 1996 my key to my office, my support belt and my two-wheeled cart came up missing and my computer was tampered with.

II. Respondent [*20] stated that I had been written up for negligence. Respondent has not provided a reason for the harassment to which I have continually been subjected.

III. I believe that I have been retaliated against for filing a former charge of discrimination with the EEOC in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990,

in that I have been harassed and written up for pretextual reasons.

In this suit, plaintiff has alleged incidents of protected expression and retaliation that were not mentioned in her EEOC charge. Specifically, she asserts two additional incidents of protected expression: two union grievances complaining of harassment filed in November 1996. She also asserts two additional incidents of alleged retaliation: a verbal warning on December 5, 1996, and a suspension on December 9, 1996. The issue is whether these additional allegations fall within the scope of her EEOC charge.

[HN12] A Title VII claim is within the scope of the EEOC charge, if "there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow [*21] out of an EEOC investigation of the allegations in the charge." *Cheek, 31 F.3d at 500*. The Seventh Circuit has explained that following such a liberal standard when determining whether a complaint is within the scope of an EEOC charge furthers Title VII's remedial goals because enforcement depends on "laypersons, often unschooled." *Babrocky v. Jewel Food Co., 773 F.2d 857, 864 (7th Cir. 1985)*. So, [HN13] while a plaintiff must specifically describe the offending conduct to the EEOC, courts should not impose strict technical standards on EEOC charges filed by non-lawyers. *Cheek, 31 F.3d at 502*.

The two additional disciplinary actions Kause alleges in her complaint are similar to the one alleged in the charge. In her charge, plaintiff stated, "On December 16, 1996 I was written up . . . ." An EEOC investigation of this allegation would likely turn up additional disciplinary actions in the same time period. And, while in her EEOC retaliation charge plaintiff claimed that the protected expression which gave rise to the retaliation was her prior EEOC gender and disability charge, in her complaint she alleges two additional incidents of protected [*22] expression, two union grievances in November 1996. The EEOC charge and the grievances were close in time and the alleged retaliation followed. Plaintiff cannot be expected to know the exact motivation for the conduct of which she complains. Her EEOC charge adequately put the EEOC and defendant on notice of her retaliation claim.

## V. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [26-1] is granted as to Count II and denied in all other respects without prejudice for failure to satisfy Local Rule 12.

ENTER:

JOAN B. GOTTSCHALL

United States District Judge

DATED: September 8, 1999