# EXHIBIT D

LEXSEE 2005 USDISTLEXIS 30925

**DONNY MCGEE, Plaintiff, v. CITY OF CHICAGO, et al. Defendants.**

Case No. 04 C 6352

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**2005 U.S. Dist. LEXIS 30925**

**June 23, 2005, Decided
June 23, 2005, Filed**

**SUBSEQUENT HISTORY:** Motion granted by McGee v. City of Chicago, 2005 U.S. Dist. LEXIS 31060 (N.D. Ill., June 23, 2005)

**PRIOR HISTORY:** McGee v. City of Chicago, 2005 U.S. Dist. LEXIS 30924 (N.D. Ill., June 23, 2005)

**COUNSEL:** [*1] For Donny McGee, Plaintiff: Arthur R. Loevy, Amanda C Antholt, Jonathan I. Loevy, Russell R Ainsworth, Loevy & Loevy, Chicago, IL; Richard J. Dvorak, Dvorak & Toppel, Chicago, IL.

For City of Chicago, Defendant: Arnold Hyunguk Park, Penelope Moutoussamy George, City of Chicago, Department of Law, Chicago, IL; Diane S. Cohen, City of Chicago, Law Department, Corporation Counsel, Chicago, IL; Mara Stacy Georges, City of Chicago, Law Department, Corporation Counsel, Chicago, IL.

For Chgo PD Farley, Chgo PD Lenihan, Chgo PO Bartik, Defendants: Jonathan Clark Green, Chicago Corporation Counsel, Chicago, IL; Avi T. Kamionski, Corporation Counsel's Office, Chicago, IL; Thomas Joseph Platt, City of Chicago, Department of Law, Individual Defense Litigation, Chicago, IL.

**JUDGES:** Nan R. Nolan, United States Magistrate Judge.

**OPINION BY:** Nan R. Nolan

**OPINION**

*MEMORANDUM OPINION AND ORDER*

**Magistrate Judge Nan R. Nolan**

This civil rights case is before the Court on the Individual Defendants' request for protective order shielding certain categories of information produced during discovery from public disclosure. For the reasons that follow, the Individual Defendants' request is granted [*2] in part and denied in part.

*BACKGROUND*

Plaintiff brings this action against the City of Chicago and three of its police officers. Plaintiff alleges that the Defendant Officers "attempted to frame [him] for murder, despite the lack of any physical evidence and [his] absolute innocence." Cmplt. P 2. Plaintiff further alleges that he was wrongfully incarcerated for three years before he was ultimately acquitted. *Id*. The Defendant Officers deny Plaintiff's allegations. Def. Officers' Answer P 2. The City's Answer states that it lacks sufficient information or knowledge to form a belief as to the truth of these allegations. City's Answer P 2.

Plaintiff brings claims of unlawful detention, denial of right to counsel, and deprivation of due process against the Defendants Officers. Plaintiff also brings a *Monell* claim against the City of Chicago for the deprivation of his constitutional rights. Plaintiff additionally brings state law claims for malicious prosecution and intentional infliction of emotional distress against the Defendant Officers.

*DISCUSSION*

The Federal Rules of Civil Procedure permit "discovery regarding any matter, not privileged, that [*3] is relevant to the claim or defense of any party. . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "The Rules do not differentiate between infor-

Case 1:08-cv-00549   Document 29-5   Filed 08/19/2008   Page 3 of 6

Page 3
2005 U.S. Dist. LEXIS 30925, *

mation that is private or intimate and that to which no privacy interests attach." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 30, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984). "Thus, the Rules often allow extensive intrusion into the affairs of both litigants and third parties." *Id*. The Supreme Court has recognized that the liberal discovery rules "may seriously implicate privacy interests of litigants and third parties." *Id*. at 34. In order to protect the legitimate privacy interests of litigants, Federal Rule of Civil Procedure 26(c) allows a court to enter a protective order for good cause shown. Rule 26(c) provides that "for good cause shown, the court . . . may make any order which justice requires to protect a party . . . from annoyance [and] embarrassment. . . ." *See also Seattle Times*, 467 U.S. at 35 n.21 [*4] (recognizing that although Rule 26(c) does not contain a specific reference to privacy, it is "implicit in the broad purpose and language of the Rule.").

Good cause "is difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987). "In deciding whether good cause exists, a district court must balance the harm to the party seeking the protective order against the importance of disclosure to [the] public." *Doe v. White*, 2001 U.S. Dist. LEXIS 7726, 2001 WL 649536, at *1 (N.D. Ill. June 8, 2001). Although pretrial discovery is usually conducted in private, "the public at large pays for the courts and therefore has an interest in what goes on at all stages of a judicial proceeding." *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 944-45 (7th Cir. 1999). Factors a court may consider in making the good cause determination include "privacy interests, whether the information is important to public health and safety and whether the party benefitting from the confidentiality of the protective order is a public [*5] official." *Id* To establish good cause, a moving party must show that disclosure of the information for which protection is sought "will result in a clearly defined and very serious injury." *Andrew Corp. v. Rossi*, 180 F.R.D. 338, 341 (N.D. Ill. 1998) (Keys, MJ.). Moreover, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n. 16, 101 S. Ct. 2193, 68 L. Ed. 2d 693 (1981).

The Seventh Circuit has made clear that a trial judge must make an independent determination of good cause prior to issuing a protective order, even if the parties submit an agreed protective order. "The judge is the primary representative of the public interest in the judicial process" and has an independent duty to balance the public's interest against the "property and privacy interests of the litigants." *Citizens*, 178 F.3d at 945. A court need not determine good cause on a document-by-document basis. *Id*. at 946. Rather, a court may authorize the parties to restrict public access to properly demarcated categories of legitimately confidential information [*6] if the judge (1) satisfies herself that the parties know what the legitimate categories of protectable information are and are acting in good faith in deciding which parts of the record qualify for protection and (2) makes explicit that either party and any interested member of the public can challenge the designation of particular documents. *Id*. Finally, a court has broad discretion in fashioning appropriate protective orders. *Ball Memorial Hosp., Inc. v. Mutual Hosp. Ins., Inc.*, 784 F.2d 1325, 1346 (7th Cir. 1986).

With these principles in mind, the Court considers the proposed protective order at issue here. The Individual Defendants' proposed protective order seeks to limit from public disclosure six categories of information: (1) police officer personnel files; (2) personal and family information of police officers, including residential information; (3) Chicago Police Department Employee Complaint Histories; (4) Chicago Police Department Complaint Register files; (5) polygraph-related files; and (6) personal financial information of police officers. Plaintiff has no objection to keeping categories 1, 2, 5, and 6 confidential but strenuously argues that Complaint [*7] Register files and Employee Complaint Histories (with the exception of identifying information of complainants) should not be subject to a protective order. The Court addresses the various categories in turn.

A. *Defendant Officers' Personnel Files and Personal Information -- Categories 1. 2. and 6*

Good cause exists to enter a protective order prohibiting the public disclosure of categories 1, 2, and 6 above for purposes of pretrial discovery. [1] Police officers have a legitimate expectation of privacy concerning their personnel files, which often contain social security number, driver's license number, residential address and contact information, financial information, names of family members, names of insurance beneficiaries, wage information, and other private matters. *See Knoll v. American Telephone & Telegraph Co.*, 176 F.3d 359, 365 (6th Cir. 1999) (noting personnel files might contain "highly personal information such as an individual's unlisted address and telephone number, marital status, wage information, medical background, credit history (such as requests for garnishment of wages) and other work-related problems unrelated to plaintiff's claim). [*8] Public disclosure of private information contained in personnel files and other personal and family information may cause the Individual Defendants unnecessary annoyance or embarrassment and would unfairly and gratuitously invade their privacy. Moreover, the public has little interest in learning the personal and family information of the Defendant

Case 1:08-cv-00549   Document 29-5   Filed 08/19/2008   Page 4 of 6

Page 4
2005 U.S. Dist. LEXIS 30925, *

Officers because it does not concern the officers' performance of their public duties. Most importantly, disclosure of personal and family information of police officers could threaten the safety of the police officers and their families. [2]

> 1  If the case proceeds to trial, the trial court will determine whether any of the protected information should become a part of the public record.
> 2  To minimize any risk of inadvertent disclosure of information which could jeopardize the safety of the police officers and their families, the Court orders that these three categories of information be produced on an attorneys' eyes only basis.

B. *C.R. Files and Related* [*9] *Materials -- Categories 3 and 4*

The Individual Defendants also request a protective order provision shielding Chicago Police Department Employee Complaint Histories and complaint register files ("C.R." files) from public disclosure. C.R. files are generated by the City of Chicago during its internal investigation into allegations of police misconduct. Like the internal affairs investigations at issue in *Mercy v. County of Suffolk* 93 F.R.D. 520, 522 (E.D. N.Y. 1982), "these investigations are conducted, at taxpayer expense, to determine whether the procedures of the department or individual police officers were responsible for the complained-of incident, and whether disciplinary or other remedial action is necessary to prevent the recurrence of similar incidents." As the Court understands it, the Employee Complaint Histories list the date of each allegation of misconduct against an officer, the category of alleged misconduct, and disposition of the allegations.

The Individual Defendants contend that three main factors support prohibiting the public disclosure of the C.R. files and Employee Complaint Histories: (1) the possibility that the allegations are false; [*10] (2) the privacy and security interests of the police officers; and (3) the potential chilling effect on future police internal investigations. None of these arguments warrants a finding of good cause.

The Individual Defendants first argue that public disclosure of C.R. files is prejudicial to police officers because "an investigation into allegations of misconduct against a police officer are initiated, conducted, and brought to conclusion, and an investigative file is generated and preserved" regardless of the merit of the complaint. Indiv. Defs' Brief at 6. The Individual Defendants contend that public dissemination of the C.R. files and related material is "inherently unfair to the accused officer because the Department procedures are set up so that an investigation is guaranteed to follow an allegation, regardless of the allegation's merits." *Id*. at 7. Without a protective order, the Individual Defendants argue, "documents would enter the public domain that contain unsubstantiated, even frivolous, accusations, thereby needlessly tainting the reputation of a police officer." *Id*.

The fact that the C.R. files contain allegations, and maybe even false ones, does not provide [*11] a legitimate basis for keeping these documents confidential. The Court is confident that the media and the public understand that C.R. files contain accusations and not necessarily allegations that are truthful. *See Wiggins v. Burge*, 173 F.R.D. 226, 230 (N.D. Ill. 1997) (stating "the general public is sophisticated enough to understand that a mere allegation of police torture, just like a lawsuit, does not constitute actual proof of misconduct.").

The Individual Defendants further argue that public disclosure of their C.R. files violates their privacy and security interests. Any invasion of the Defendant Officers' privacy interests does not outweigh the significant public interest in the disclosure of the C.R. files. The Defendant Officers are public servants, and "privacy interests are diminished when the party seeking protection is a public person subject to legitimate public scrutiny." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). The C.R. files and related materials concern the police officers' performance of their public duties. "Performance of police duties and investigations of their performance is a matter of great public [*12] importance." *Wiggins*, 173 F.R.D. at 229; *see also Auriemma v. Rice*, 910 F.2d 1449, 1460 (7th Cir. 1990) (stating "it would be difficult to find a matter of greater public concern in a large metropolitan area than police protection and public safety."). Also, any sensitive information in the C.R. files implicating the security interests of the officers, such as home addresses and phone numbers, may be redacted before production. [3]

> 3  Unfortunately, the Individual Officers' brief fails to specific what types of information contained in the C.R. files might raise security concerns.

Lastly, the Individual Defendants argue that public dissemination of C.R. files "risks compromising the integrity of the investigative process." Indiv. Defs' Brief at 7. The Individual Defendants assert that complainants and witnesses will be less likely to come forward with complaints of police misconduct if their identities are not kept confidential. Complainants and witnesses involved in law enforcement [*13] investigations do have a valid expectation of privacy with respect their identities. *See Lepianka v. The Village of Franklin Park*, 2004 U.S. Dist. LEXIS 5013, 2004 WL 626830, at *2 (N.D. Ill. March 26, 2004). Accordingly, all identifying information of complainants and witnesses shall be protected from public disclosure and be produced on an attorneys'

Case 1:08-cv-00549    Document 29-5    Filed 08/19/2008    Page 5 of 6

Page 5
2005 U.S. Dist. LEXIS 30925, *

eyes only basis. Because the identities of the complainants and witnesses will be protected from public disclosure, the Individual Defendants have not justified a protective order sealing the entire C.R. files and related information from public view.

Moreover, the Court strongly disagrees with the Individual Defendants' assertion that "the interest of the public in general is better served by preserving the confidentiality of Chicago Police Department investigations of allegations of misconduct, rather than by their widespread public disclosure." Indiv. Defs' Brief at 8. This Court believes that the effectiveness of the Chicago Police Department's internal investigations is strengthened by public review of C.R. files produced in civil rights litigation. For example, this Court feels that police officers are more likely to be truthful or candid [*14] if they know potential civil rights plaintiffs may obtain internal investigation records. *See King v. Conde*, 121 F.R.D. 180, 193 (E.D. N.Y. 1988) (Weinstein, J.) (stating "if the fear of disclosure in civil rights lawsuits does have some real effect on officers' candor, the stronger working hypothesis is that fear of disclosure is more likely to increase candor than to chill it."). Moreover, public and media scrutiny over how allegations of police misconduct are handled and investigated by the police department encourages the police department to fairly and honestly investigate and resolve such allegations. In sum, this Court whole-heartedly agrees with Judge Pratt's comments in the *Mercy* case:

> No legitimate purpose is served by conducting [police] internal investigations under a veil of near-total secrecy. Rather, knowledge that a limited number of persons, as well as a state or federal court, may examine the file in the event of civil litigation may serve to ensure that these investigations are carried out in an even-handed fashion that the statements are carefully and accurately taken, and that the true facts come to light, whether they reflect favorably [*15] or unfavorably on the individual police officers involved or on the department as a whole.

*Mercy*, 93 F.R.D. at 522.

C. *"Polygraph-Related Files" -- Category 5*

Finally, the Court denies without prejudice the Individual Defendants' request for a protective order governing "polygraph-related files." The Individual Defendants' brief fails to provide enough information regarding the "polygraph-related files" at issue for the Court to determine whether good cause exists to shield them from public view. For example, the Individual Defendants fail to identify the test-takers and the circumstances surrounding the polygraph exam(s). Are these polygraph examinations taken by the Defendant Officers or the Plaintiff or both? The Individual Defendants have not explained. Moreover, although their brief cites generally to various federal and state statutes and regulations which supposedly protect the "polygraph-related files" at issue from public disclosure, the Individual Defendants do not point the Court to specific supporting portions of those statues or supporting regulations. The Individual Defendants' brief also states that "a great deal of polygraph-related file [*16] materials at the Chicago Police Department contain very sensitive information involving minors who have been subject to serious sexual abuse." The Individual Defs' Brief at 2. They further state that this type of information must be handled with the "utmost confidence." *Id*. How are polygraph results involving minors subject to sexual abuse even relevant to this case? The Individual Defendants do not explain. The Individual Defendants must provide a more detailed factual and legal analysis demonstrating good cause if they seek to protect "polygraph-related files" from public disclosure.

D. *Remaining Issues*

A few remaining matters regarding protective orders merit mention. The Court directs the parties to *Pepsico, Inc. v. Redmond*, 46 F.3d 29 (7th Cir. 1995) and *In the Matter of Grand Jury*, 983 F.2d 74 (7th Cir. 1992), which discuss the impropriety of filing entire pleadings or briefs under seal. The proposed protective order should be revised to indicate that the parties must file public pleadings and briefs but may file sealed supplements if necessary to discuss in detail materials subject to the protective order. Documents which contain [*17] both protectable and non-protectable information need only have the protectable portions of the documents redacted in order to maintain secrecy. *Citizens*, 178 F.3d at 945. Finally, the proposed protective order should be revised to indicate that either party or an interested member of the public can challenge the confidential status of particular documents pursuant to the protective order. *Citizens*, 178 F.3d at 946. Counsel shall submit an agreed proposed protective order in a form complying with this order.

**ENTER:**

**Nan R. Nolan**

**United States Magistrate Judge**

Dated: June 23, 2005